# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL GOERGEN**, as an individual, | Case No. 3:22-cv-1258-SI (Lead) |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **BLACK ROCK COFFEE BAR, LLC**, an Oregon limited liability company, | |
| Defendant. | |

| | |
|---|---|
| **CHRISTOPHER LATTANZIO**, as an individual, | Case No. 3:22-cv-1259-SI (Consolidated) |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **BLACK ROCK COFFEE BAR, LLC**, an Oregon limited liability company, | |
| Defendant. | |

| | |
|---|---|
| **THE ROBERT LATTANZIO TRUST DATED 6/23/2006** by and through Trustee, Robert Lattanzio, | Case No. 3:22-cv-1260-SI (Consolidated) |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **BLACK ROCK COFFEE BAR, LLC**, an Oregon limited liability company, | |
| Defendant. | |

Justin G. Reden, REDEN & REDEN, APC, 16885 Via Del Campo Court, Suite 320, San Diego, CA 92127; and Casey M. Arbenz, PUGET LAW GROUP, 938 Broadway, Tacoma, WA 98402. Of Attorneys for Plaintiffs.

J. Matthew Donahue, Joseph L. Franco, and Kristin Asai, HOLLAND & KNIGHT LLP, 601 SW Second Avenue, Suite 1800, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

In 2020, in a lawsuit separate from the pending consolidated cases, Defendant Black Rock Coffee Bar, LLC (Black Rock) moved this Court to compel arbitration with several entities owned in part or otherwise associated with Michael Goergen, Christopher Lattanzio, and the Robert Lattanzio Trust, who are Plaintiffs in the pending consolidated cases. On August 14, 2020, the Court granted Black Rock's motion and ordered it and the entities (collectively, the BR Entities) to arbitrate their dispute. *Black Rock Coffee Bar, LLC v. BR Coffee, LLC*, 2020 WL 4728877 (D. Or. Aug. 14, 2020). Plaintiffs were not included in Black Rock's motion to compel and were not subject to the Court's order to arbitrate.

During the course of the arbitration, Black Rock asked the arbitrator for leave to amend to add claims against Plaintiffs. Plaintiffs objected, arguing that there was no contract between them and Black Rock that required Plaintiffs to arbitrate their dispute, nor that gave the arbitrator jurisdiction to determine that threshold issue of arbitrability for Plaintiffs. Plaintiffs refused to participate in the arbitration and instead filed an action in federal court in California to litigate whether the arbitrator had the authority to determine the threshold issue of arbitrability. Meanwhile, the arbitrator concluded that he did have the authority to determine whether any contract existed that bound Plaintiffs to arbitrate, determined that they were subject to the arbitration clauses in the contracts between the BR Entities and Black Rock, and made substantive findings against them even though they did not participate in the arbitration. The

arbitrator ultimately found in favor of Black Rock for tens of millions of dollars, plus attorney's fees.

Plaintiffs' federal court action was transferred to this Court. Currently before the Court is the issue of whether a federal court or the arbitrator has the authority to determine whether there is a valid contract between Plaintiffs and Black Rock requiring arbitration. For the following reasons, the Court concludes that it is the federal court, and not the arbitrator, that must determine in the first instance whether there is a valid contract subjecting Plaintiffs to arbitration.

**STANDARDS**

In all contracts involving interstate commerce, the FAA specifies that "written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (emphasis in original) (citing 9 U.S.C. §§ 3-4). The district court must limit itself "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). But the "liberal federal policy regarding the scope of arbitrable issues is inapposite" to the question of whether a party assented to the arbitration agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). The existence of a valid arbitration agreement remains "a matter of contract and a party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S.

643, 648 (1986) (quotation marks omitted). Because arbitration is "a matter of contract," the

FAA "places arbitration agreements on an equal footing with other contracts and requires courts

to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67

(2010) (citation omitted). Courts also should generally "apply ordinary state-law principles that

govern the formation of contracts" to determine whether the parties agreed to arbitrate. *First

Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

A court must decide "the threshold issue of the *existence* of an agreement to arbitrate."

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991)

(emphasis in original). "[P]arties may delegate threshold arbitrability questions to the arbitrator,

so long as the parties' agreement does so by 'clear and unmistakable' evidence," but "before

referring a dispute to an arbitrator, the *court* determines whether a valid arbitration agreement

exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting

*First Options*, 514 U.S. at 944) (emphasis added). In deciding whether an agreement to arbitrate

exists, a court should apply a summary judgment-style standard. "Only when there is no genuine

issue of fact concerning the formation of the agreement should the court decide as a matter of

law" that an agreement to arbitrate exists. *Three Valleys*, 925 F.2d at 1141 (quoting *Par-Knit

Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). A court must give the

party opposing a motion to compel arbitration "the benefit of all reasonable doubts and

inferences that may arise." *Id.* The party seeking to compel arbitration bears "the burden of

proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson

v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). When "the making of the arbitration

agreement" is at issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

"The court shall hear and determine such issue" if the party alleged to be in violation of the agreement does not demand a jury trial. *Id.*

## DISCUSSION

### A.  Evidentiary Disputes

The parties raise numerous evidentiary objections and other disputes. Plaintiffs request that the Court take judicial notice of many documents and court opinions, to which Defendant objects as irrelevant or an improper request for judicial notice of a document and not a fact. Plaintiffs lodge numerous evidentiary objections to Defendant's evidence. None of these objections, however, are relevant to the Court's decision about whether the Court or the arbitrator decides the threshold decision of whether an agreement to arbitrate exists among the parties. The disputed evidence is relevant, at most, only at the next step in the process, i.e., actually determining whether a valid agreement to arbitrate exists between Plaintiffs and Black Rock, which the Court discusses further below. The only documents that are relevant to the threshold inquiry are the underlying contracts between the BR Entities and Black Rock, which are not in dispute.

### B.  Who Decides Whether a Contract Exists

The threshold question is who decides whether a contract exists between Plaintiffs and Black Rock requiring arbitration. There are several documents or types of documents relevant to this dispute. The first is the Geographic Territory Agreement (GTA), which Black Rock and BR Coffee, LLC signed in August 2019. The second type of document is a Franchise Agreement (FA). There are three FAs relevant to this dispute, one for each of the Black Rock-branded coffee bars that the BR Entities ultimately opened: (1) the Blue Diamond FA, signed August 23, 2019; (2) the Rainbow FA, signed the same day; and (3) the Silverado Ranch FA, signed in October 2019. The GTA is a master contract that gave BR Coffee the exclusive right to create up

to 10 coffee bars in Clark County, Nevada. The FAs state the specific terms governing the operations of each of the respective franchises that BR Coffee created. The GTA and FAs contain arbitration clauses.

Black Rock contends that the contracts delegate to the arbitrator the authority to determine questions of arbitrability because the FAs and the GTA incorporate the rules of the American Arbitration Association (AAA Rules). The Ninth Circuit has held that incorporating the AAA Rules is a clear and unequivocal indication that parties to a contract have delegated issues of arbitrability, such as unconscionability, to the arbitrator. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015). In *Brennan*, however, the party challenging arbitration was a named party in the underlying contract that incorporated the AAA Rules. Thus, there was no dispute about *whether* there was an agreement to arbitrate or even an agreement to delegate authority to the arbitrator to decide issues of arbitrability. The only dispute in *Brennan* was about the *enforceability* of the admitted agreement between the parties, not the *existence* of the agreement.

Here, Plaintiffs *were not* named parties in the underlying contracts that incorporated the AAA Rules. Thus, Black Rock is putting the cart before the horse in relying on the fact that contracts to which Plaintiffs were not a named party incorporated the AAA Rules as the basis to *subject Plaintiffs* to the arbitrator's jurisdiction to determine whether an arbitration agreement even exists. As the Supreme Court has explained:

> This Court has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by "clear and unmistakable" evidence. *To be sure*, before referring a dispute to an arbitrator, *the court determines whether a valid arbitration agreement exists*. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.

*Henry Schein, Inc.*, 139 S. Ct. at 530 (citations omitted) (emphasis added).

A court, therefore, must determine whether a valid arbitration agreement exists *involving Plaintiffs*, or, more specifically, whether Plaintiffs can be held subject to the terms of the FAs or GTA. The mere existence of the FAs and GTA, including their adoption of the AAA Rules, simply is insufficient to provide the arbitrator with jurisdiction over the question of whether Plaintiffs, as nonsignatories, are subject to arbitration.

In other words:

> The issue of contract formation, however, is not a delegable gateway issue. The fundamental threshold question of whether there *exists* a binding contract (of which an arbitration clause is a part) cannot be delegated because it cannot be assumed that a delegation clause contained therein must be given effect. In other words, if a contract contains a delegation clause, that delegation clause may be given effect only where the contract has been formed in the first instance. The question of contract formation is for the court.

*Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1248 (N.D. Cal. 2019) (emphasis in original) (citations omitted); *id.* at 1248 n.3 ("Question of contract formation is different from question about validity of the contract. The latter, which includes questions about, *e.g.*, unconscionability, may be subject to arbitration."); *see also Carpenters 46 N. California Cmtys. Conf. Bd. v. Zcon Builders*, 96 F.3d 410, 414-15 (9th Cir. 1996) ("The Carpenters contend that Sharon Hill, although not a signatory to the Agreement, is nevertheless bound by its terms because it is an alter ego of Zcon, which did sign the Agreement. However, that issue of arbitrability is clearly reserved for the Courts, and is not, itself, a proper subject of arbitration."). It is a court, therefore, that must decide whether Plaintiffs, as nonsignatories, may be held subject to the underlying contracts. For that reason, the Court stays Black Rock from enforcing the arbitrator's decision against Plaintiffs until after this Court has resolved the question of whether Plaintiffs are subject to the arbitration agreements at issue.

PAGE 7 – OPINION AND ORDER

### C.  Whether Nonsignatories Can Be Bound to an Agreement

"[B]ecause arbitration agreements are contracts, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quotation marks omitted)); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (same). "General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009). "[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel . . . . " *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quotation marks omitted); *see also Mundi*, 555 F.3d at 1045.

Here, Plaintiffs argue that the Court should not consider any issue beyond the threshold issue of whether the Court or the arbitrator has the authority to determine whether there is a valid agreement in existence that requires Plaintiffs to arbitrate. Plaintiffs argue that because Black Rock did not file a petition to compel their arbitration under 9 U.S.C. § 4, if the Court concludes that it is the Court and not the arbitrator who makes this threshold determination, then no other question is ripe. Plaintiffs cite no authority that mandates that a petition under § 4 is the only avenue by which a court may consider the merits of whether a nonsignatory is subject to arbitration. Plaintiffs brought this issue to the Court, seeking protection from orders that had already been issued by the arbitrator.

Plaintiffs are arguing form over substance. Additionally, § 4 merely requires that the Court "hear the parties," and the Court has given the parties the opportunity to brief and submit evidence. Indeed, the parties already have submitted nearly 3,200 pages of evidence in support of their respective positions in this dispute. In the interest of judicial efficiency, the Court intends to

resolve the remaining issue—whether Plaintiffs are subject to the arbitration agreements in the FAs and GTAs, without the need for a formal petition to compel. If Plaintiffs are subject to arbitration, any remaining questions of arbitrability would be for the arbitrator to decide because those contracts incorporate the AAA Rules.

In summary, the Court has concluded that it will determine whether Plaintiffs are subject to the arbitration agreements. If so, the question of which specific claims are subject to the arbitration clause has been delegated to the arbitrator. Now that the parties have the benefit of this conclusion, the Court will allow one final round of briefing. The parties may also want to reconsider their evidentiary objections. The Court notes that it will take judicial notice of the existence of publicly available records, such as court opinions, but not of the truth of the facts recited therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." (quotation marks omitted)). Thus, disputing the accuracy of the contents of such records may not be a good use of either a party's or the Court's resources.

## CONCLUSION

It is for the Court, and not the arbitrator, to determine whether Plaintiffs have a valid arbitration agreement with Black Rock. The parties may submit by January 25, 2023, one final brief on whether Plaintiffs, as nonsignatories, are bound by the underlying contracts. Black Rock is stayed from enforcing the arbitration award against Plaintiffs until further order of the Court.

**IT IS SO ORDERED**.

DATED this 10th day of January, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge