IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL GOERGEN**, as an individual,<br><br>      Plaintiff,<br><br>      v.<br><br>**BLACK ROCK COFFEE BAR, LLC**, an Oregon limited liability company,<br><br>      Defendant. | Case No. 3:22-cv-1258-SI (Lead)<br><br>**OPINION AND ORDER** |
| **CHRISTOPHER LATTANZIO**, as an individual,<br><br>      Plaintiff,<br><br>      v.<br><br>**BLACK ROCK COFFEE BAR, LLC**, an Oregon limited liability company,<br><br>      Defendant. | Case No. 3:22-cv-1259-SI (Consolidated)<br><br>**OPINION AND ORDER** |
| **THE ROBERT LATTANZIO TRUST DATED 6/23/2006** by and through Trustee, Robert Lattanzio,<br><br>      Plaintiff,<br><br>      v.<br><br>**BLACK ROCK COFFEE BAR, LLC**, an Oregon limited liability company,<br><br>      Defendant. | Case No. 3:22-cv-1260-SI (Consolidated)<br><br>**OPINION AND ORDER** |

Justin G. Reden, REDEN & REDEN, APC, 16885 Via Del Campo Court, Suite 320, San Diego, CA 92127; and Casey M. Arbenz, PUGET LAW GROUP, 938 Broadway, Tacoma, WA 98402. Of Attorneys for Plaintiffs.

J. Matthew Donahue, Joseph L. Franco, and Kristin Asai, HOLLAND & KNIGHT LLP, 601 SW Second Avenue, Suite 1800, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

These cases arise from a dispute between franchisor Black Rock Coffee Bar LLC (Black Rock or Defendant), the Defendant in the three above-captioned cases, and its franchisees, entities owned in part or otherwise affiliated with Plaintiffs in these cases, Michael Goergen (Goergen), Christopher Lattanzio (Lattanzio), and the Robert Lattanzio Trust (Trust). In June 2020, Black Rock filed a petition to compel arbitration against six limited liability companies (LLC), BR Coffee LLC, BR Rainbow OP LLC, BR Blue Diamond OP LLC, BR Silverado Ranch OP LLC, BR Rainbow North OP LLC, and BR Ft. Apache OP LLC (collectively, the BR Entities). In August 2020, the Court granted Black Rock's petition and ordered the six BR Entities to participate in an arbitration proceeding initiated by Black Rock. *Black Rock Coffee Bar, LLC v. BR Coffee, LLC*, Case No. 3:20-cv-976-SI, 2020 WL 4728877 (D. Or. Aug. 14, 2020). Black Rock, however, did not include in its petition to compel arbitration any Plaintiffs in the above-captioned cases. Accordingly, the Court did not order any of these Plaintiffs to participate in the arbitration between Black Rock and the BR Entities.

During the arbitration between Black Rock and BR Entities, Black Rock asked the arbitrator for leave to amend its complaint to add Goergen, Lattanzio, and the Trust as additional parties in the arbitration proceeding. Plaintiffs objected, arguing that there was no contract requiring arbitration between them and Black Rock and that the arbitrator lacked authority to determine whether these Plaintiffs could be required to participate in the arbitration then pending among Black Rock and the BR Entities. The arbitrator granted Black Rock's motion, but

Plaintiffs refused to participate in the arbitration. Instead, they filed an action in state court in California, which Defendant removed to federal court in California, to determine whether the arbitrator had the authority to determine the threshold issue of arbitrability. Meanwhile, the arbitrator concluded that he did have the authority to determine whether Plaintiffs could be required to arbitrate, determined that they were subject to the arbitration provisions contained in the contracts between Black Rock and the BR Entities, and made substantive findings against Plaintiffs, even though they did not participate in the arbitration. The arbitrator ultimately found in favor of Black Rock and awarded Black Rock tens of millions of dollars in damages, plus nearly $1 million in attorney's fees.

The federal court in California transferred Plaintiffs' lawsuit to this Court. The Court directed the parties to brief two questions: (1) whether the federal court or the arbitrator was the proper decisionmaker to determine whether Plaintiffs had a valid arbitration agreement with Black Rock; and (2) whether Plaintiffs were subject to the arbitration agreement contained in the contracts between Black Rock and the BR Entities. On January 10, 2023, the Court concluded that it was for the Court, and not the arbitrator, to determine whether Plaintiffs were bound to a valid arbitration agreement with Black Rock. *Goergen v. Black Rock Coffee Bar, LLC*, 2023 WL 142911, at *3-4 (D. Or. Jan. 10, 2023) (*Goergen I*). On February 6, 2023, the Court concluded that Plaintiffs, as nonsignatories to the franchise agreements, were not otherwise bound to the arbitration clauses of the agreements. *Goergen v. Black Rock Coffee Bar, LLC*, 2023 WL 1777980, at *14 (D. Or. Feb. 6, 2023) (*Goergen II*).

Plaintiffs now seek attorney's fees under Oregon Revised Statutes (ORS) § 20.083 and litigation costs. Plaintiffs request $125,410.20 in attorney's fees and $3,708.09 in costs.

Defendants raise several objections to both the requested fees and costs. For the reasons discussed below, the Court grants in part Plaintiffs' motion for attorney's fees and Bill of Costs.

## STANDARDS

### A. Oregon Law

"In an action where a federal district court exercises subject matter jurisdiction over a state law claim, so long as state law does not contradict a valid federal statute, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Avery v. First Resol. Mgmt. Corp.*, 568 F.3d 1018, 1023 (9th Cir. 2009) (citation and quotation marks omitted). Under Oregon law,

> A prevailing party in a civil action relating to an express or implied contract is entitled to an award of attorney fees that is authorized by the terms of the contract or by statute, even though the party prevails by reason of a claim or defense asserting that the contract is in whole or part void, a claim or defense asserting that the contract is unenforceable or a claim or defense asserting that the prevailing party was not a party to the contract.

ORS § 20.083; *see also* ORS § 20.096(1) ("In any action or suit in which a claim is made based on a contract that specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the party that prevails on the claim shall be entitled to reasonable attorney fees in addition to costs and disbursements, without regard to whether the prevailing party is the party specified in the contract and without regard to whether the prevailing party is a party to the contract.").

The prevailing party "is the party who receives a favorable judgment" on the claim. ORS § 20.077. After concluding that a prevailing party shall recover reasonable attorney's fees, a court applying Oregon law must consider the specific factors set forth in ORS § 20.075 to determine the amount of attorney's fees to be awarded. The specific factors set forth in ORS § 20.075(1) are:

PAGE 4 – OPINION AND ORDER

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
>
> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
>
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
>
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
>
> (g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.
>
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

ORS § 20.075(1).[1] After considering these eight factors, ORS § 20.075(2) then directs the court to consider the following additional eight factors:

> (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.
>
> (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

---

[1] Under subsection (1), these factors are to be first considered in determining whether to award fees "in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees." In addition, in any case in which an award of fees is authorized or required, the court shall consider the factors specified in subsection (1) as well as the factors specified in subsection (2) "in determining the amount of an award of attorney fees in those cases." ORS § 20.075(2).

>  (c)     The fee customarily charged in the locality for similar legal services.
>
>  (d)     The amount involved in the controversy and the results obtained.
>
>  (e)     The time limitations imposed by the client or the circumstances of the case.
>
>  (f)     The nature and length of the attorney's professional relationship with the client.
>
>  (g)     The experience, reputation and ability of the attorney performing the services.
>
>  (h)     Whether the fee of the attorney is fixed or contingent.

ORS § 20.075(2). Oregon law further directs that when analyzing these factors, a court should "includ[e] in its order a brief description or citation to the factor or factors on which it relies." *McCarthy v. Or. Freeze Dry, Inc.*, 327 Or. 185, 190-91 (1998). The court, however, "ordinarily has no obligation to make findings on statutory criteria that play no role in the court's decision." *Frakes v. Nay*, 254 Or. App. 236, 255 (2012).

**B.  Lodestar**

Under ORS § 20.075(2), factor (a) generally relates to the reasonableness of the number of hours expended by counsel for the prevailing party, factors (c) and (g) generally relate to the reasonableness of the hourly rates charged, and factor (d) generally informs whether an upward or downward adjustment might be appropriate. Taken together, these factors are comparable to what is often referred to as the "lodestar" method for calculating a reasonable attorney's fee. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (holding that the lodestar method yields a presumptively reasonable fee, subject to either upward or downward adjustment as appropriate); *see also Strawn v. Farmers Ins. Co. of Or.*, 353 Or. 210, 221 (2013) ("The lodestar approach that the parties have used is at least a permissible one under the statutes involved,"

including ORS § 20.075); *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 255 Or. App. 525, 554 (2013) ("The lodestar method that the trial court used is a commonly applied and permissible approach for determining the reasonableness of a fee award . . . ."). Although the lodestar calculation results in a presumptively reasonable fee, this fee may be adjusted in certain circumstances. *Perdue*, 559 U.S. at 552.

The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).[2] In making this calculation, the district court should take into consideration various factors of reasonableness, including the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel. *See Perdue*, 559 U.S. at 553-54; *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 n.11 (9th Cir. 2013).

In determining the number of hours reasonably spent, "the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking an award of attorney's fees "has the burden of submitting billing records to establish that the number of hours it has requested [is] reasonable." *Gonzalez*, 729 F.3d at 1202.

The district court may determine, in one of two ways, whether hours are excessive, redundant, or otherwise unnecessary, and thus excludable. The court may conduct an hour-by-hour analysis of the fee request. *Id*. at 1203. Alternatively, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in

---

[2] It is "well established that time spent in preparing fee applications" also is compensable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (quoting *Anderson v. Director, OWCP*, 91 F.3d 1322, 1325 (9th Cir. 1996)).

the number of hours claimed or in the final lodestar figure." *Id*. (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)). "[W]hen a district court decides that a percentage cut (to either the lodestar or the number of hours) is warranted, it must 'set forth a concise but clear explanation of its reasons for choosing a given percentage reduction.'" *Id.* (quoting *Gates*, 987 F.2d at 1400). The Ninth Circuit recognizes one exception to this rule: "[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Id*. (alteration in original) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

In addition, other courts, including the District of Oregon, specifically caution against both block-billing and providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended. *See, e.g.*, U.S. District Court, District of Oregon, Message from the Court Regarding Attorney Fee Petitions, *available at* https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (last updated Mar. 2, 2017). This Court has applied this cautionary statement, noting that "the court may excuse this method when the billing period is no more than three hours." *Updike v. Multnomah County*, 2020 WL 4736461, at *2 (D. Or. Aug. 14, 2020) (quoting *Noel v. Hall*, 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013)); *cf. Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 892 (9th Cir. 2011). For block-billing periods in excess of three hours, however, the Court has reduced each applicable entry by fifty percent. *See, e.g.*, *Fathers & Daughters Nevada, LLC v. Lingfu Zhang*, 2018 WL 3023089, at *5 (D. Or. June 18, 2018).

After determining the number of hours reasonably spent, the district court then calculates the reasonable hourly rates for the attorneys and paralegals whose work comprise the reasonable number of hours. This calculation yields the lodestar amount. For this purpose, the "'prevailing

market rates in the relevant community' set the reasonable hourly rates." *Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Id.* at 1206.

In determining reasonable hourly rates, typically "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In addition, courts in the District of Oregon have the benefit of several billing rate surveys. One useful survey is the Oregon State Bar 2017 Economic Survey (OSB 2017 Survey), which contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice. A copy of the OSB 2017 Survey is available at http://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (last visited on March 30, 2023).

## DISCUSSION

**A. Prevailing Party**

Defendant argues that Plaintiffs obtained "only a small fraction" of the relief they requested. Defendant first argues that because Plaintiffs voluntarily dismissed the American Arbitration Association and the arbitrator from the case after Defendant removed the case to federal court and those defendants filed a motion to dismiss, Plaintiffs only prevailed against one-third of the claimants and thus are entitled to one-third of their attorney's fees. This argument is rejected.

A plaintiff may voluntarily dismiss a defendant and still obtain attorney's fees incurred litigating against the remaining defendant. Defendant does not raise a challenge that any specific time entry relates only or primarily to the dismissed defendants or otherwise did not "involve a common core of facts or [was not] based on related legal theories." *See Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1172 (9th Cir. 2019). Defendant simply raises a blanket challenge that *all* time must be reduced by two-thirds because two defendants were voluntarily dismissed at the outset of this case. That argument is without merit.

Defendant also relies on Plaintiffs' initial brief, requested by the Court, on the question of who decides the threshold arbitrability issue, which Plaintiffs filed before Defendant successfully moved for summary disposition in the underlying arbitration. In that brief, Plaintiffs requested relief from this Court that included requesting certain injunctive relief relating to the underlying arbitration. The Court had set expedited briefing on the threshold arbitrability question, but before the matter was briefed, the arbitrator decided the underlying arbitration against Plaintiffs. Thus, some of the original relief requested by Plaintiffs was rendered moot.

Additionally, *the Court* framed the scope of this case, regardless of the relief requested by Plaintiffs in their initial brief (which was beyond the scope established by the Court). The Court stated that it would resolve whether it was for the arbitrator or federal court to decide the threshold question of whether Plaintiffs had an arbitration agreement with Defendant and if it was the Court's decision, the Court would resolve whether Plaintiffs were bound to the arbitration clause of the franchise agreements. *See, e.g.*, ECF 41, 50, 64. Plaintiffs prevailed on

both questions.[3] The Court rejects Defendant's argument that Plaintiffs only partially prevailed in this case.

## B.  Applicability of ORS § 20.083

Defendant argues that ORS § 20.083 does not provide a statutory basis on which Plaintiffs can assert a right to attorney's fees in this case. Defendant contends that it did not request attorney's fees in this action.[4] The Court notes, however that Defendant did not file an answer in this action, so it is unknown whether Defendant would have requested attorney's fees. Additionally, the standard under ORS § 20.083 is whether under the claim made by the party in the action, fees are *authorized* in the contract. *See, e.g.*, *Sherwood Park Bus. Ctr., LLC v. Taggart*, 267 Or. App. 217, 236 (2014) ("[ORS § 20.083 is] intended to ensure that, where a claim is made under a contract that would allow the prevailing party to receive fees, a party defending against that claim may also receive fees, even if that party prevails by asserting a defense that the contract does not control.").

These cases had a unique procedural posture. Plaintiffs requested that the Court not decide whether they are subject to arbitration on the merits and instead require Defendant to file

---

[3] Indeed, Plaintiffs ultimately prevailed on a question that they urged the Court *not* to reach. Plaintiffs requested that the Court not resolve on the merits whether Plaintiffs were subject to the arbitration clause, arguing that Defendant must first file a motion to compel arbitration.

[4] Defendant also argues that it did not base its request for attorney's fees against Plaintiffs in the underlying arbitration, in which it was awarded nearly $1 million in fees and costs, on the franchise agreements. The basis of Defendant's fee request in the arbitration is not relevant to this pending fee motion, but if it were, the Court does not find Defendant's current assertion to be so clear from the fee petition in the underlying motion. For example, Defendant argues here that its sole contractual basis for fees against the individual plaintiffs in the arbitration was the guarantees, but there is no guarantee signed by the Trust, and Defendant included the Trust in its argument in the arbitration that "Respondents" owed full fees regardless of whether the arbitrator found a basis to conclude that fees were owed for a "willful and malicious" misappropriation of trade secrets.

PAGE 11 – OPINION AND ORDER

a petition to compel Plaintiffs to arbitration—thus making Plaintiffs file a formal "claim." The Court declined to put form over substance and resolved these cases as though Defendant had filed such a petition. The Court considered on the merits whether Plaintiffs could be compelled to arbitration. The Court did not require Defendant to file answers or to file a formal petition. Nonetheless Defendant's position (or "claim") in these cases was very clear—Defendant argued that Plaintiffs were parties to the franchise agreements as "Controlling Principals." Defendant also argued that if Plaintiffs were not "Controlling Principals," then they were subject to the franchise agreements for several other reasons, including through principles of agency, as third-party beneficiaries, through estoppel, and through the common law doctrine of alter-ego and piercing the corporate veil.[5]

If Defendant had prevailed on their position in these cases, then the Court would have concluded that Plaintiffs were parties to or otherwise bound by the franchise agreements. The franchise agreements have an attorney's fee provision that provides, among other things, "If either party initiates a judicial or other proceeding, the prevailing party in such proceeding will be entitled to reimbursement of its costs and expenses, including reasonable attorney fees." ECF 76-1 at 58. "Costs and expenses" are further defined to include a representative list of types of costs plus "litigation expenses, and attorney fees." *Id.* Defendant does not dispute that the franchise agreement provides for attorney's fees. Indeed, in the arbitration Defendant based its claim for attorney's fees in part on the franchise agreement's clause.

---

[5] Defendant argues that this case is governed by *Sherwood Park Business Center* and ORS § 20.083 does not apply because no party ever contended that Plaintiffs were parties to the franchise agreements. This argument is flatly contradicted by Defendant's position throughout this litigation. Defendant argued that Plaintiffs, although nonsignatories, were bound by the franchise agreement as Controlling Principals, as third-party beneficiaries, through agency principles, through estoppel, and through the alter-ego doctrine. No such assertions were made with respect to the relevant defendant in *Sherwood Park Business Center*.

PAGE 12 – OPINION AND ORDER

Because Defendant would have been entitled to attorney's fees had Defendant prevailed in this litigation, ORS § 20.083 applies. Plaintiffs are entitled to attorney's fees even though their defense is that they were not a party to the underlying contract. *See Sherwood Park Bus. Ctr.*, 267 Or. App. at 236; *see also King v. Neverstill Enters, LLC*, 240 Or. App. 727, 736 (2011) ("[E]ach agreement contains an attorney-fee provision that authorizes an award of attorney fees in an action brought to enforce or interpret the agreements. Plaintiff's claim for breach of the agreements by defendants is such an action, and, accordingly, she would have been entitled to recover her fees had she prevailed. Therefore, the conditions required for ORS 20.083 to apply are met here, and defendants are entitled to an award of attorney fees as the prevailing parties regardless of the defense on which they prevailed."); *United States v. Int'l Fid. Ins. Co.*, 2019 WL 9050959, at *4 (C.D. Cal. Dec. 19, 2019) (applying similar California law that "permits nonsignatories to recover attorney's fees where the opposing party would have been entitled to fees had it prevailed"); *Burkhalter Kessler Clement & George LLP v. Hamilton*, 19 Cal. App. 5th 38, 46 (Ct. App. 2018) ("Indeed, even though Hamilton was not a party to the contract, she is entitled to recover her attorney fees under [California's similar law], because Burkhalter would have been entitled to recover its attorney fees against Hamilton had it prevailed on its alleged alter ego theory of liability.").

**C. Local Rule 54-3(a)**

Defendant argues that the Court should deny Plaintiffs' fee petition for failure to comply with Local Rule 54-3(a), which requires that fee petitions "set forth the relevant facts and arguments of the moving party, along with all supporting authorities, affidavits, or declarations." The Court rejects Defendant's objection. Plaintiffs' petition sets forth sufficient details. It argues the statutory basis for their request, provides sufficient underlying facts, provides the requested

hourly rates and how they were calculated, and includes a detailed, although not always sufficient (as discussed below), list of time entries to enable the Court's lodestar review.[6]

### D. Hourly Rate

Plaintiffs request hourly rates based on the OSB 2017 Survey, 75th percentile, based on the number of years' experience of respective counsel. Plaintiffs request $334 per hour for attorney Justin G. Redden, $288 for attorney Michael J. Riddell, $236 for attorney Collin E. Cresap, and $282 for attorney Peter Caltagirone. Defendant does not object to the hourly rates requested. The Court finds these rates are reasonable.

### E. Time Spent

Defendant objects to the time for which Plaintiffs seek reimbursement on several grounds. Defendant objects to time for which more than two attorneys seek reimbursement, time that Defendant contends is clerical, time that Defendant contends was incurred in the arbitration or the California state court lawsuit, time that Defendant argues was "vague" or block billed, and time billed for motions and other issues that Defendant argues Plaintiffs lost.

The Court agrees with some of Defendant's objections. The Court agrees that most of the time spent in the arbitration and time spent in the first California lawsuit that was stayed for the arbitration is not compensable in this litigation.[7] Plaintiffs argue that if not for Defendant's

---

[6] Defendant also objects that Plaintiffs did not provide actual invoices sent to and paid by their clients, as opposed to an accounting of billable time. Defendant provides no authority on the relevance of how much a client has paid or that invoices to clients are required for fee petitions, nor has the Court seen such practice in its experience. *See, e.g.*, *Clare v. Clare*, 2021 WL 6206977, at *5 (E.D. Wash. June 11, 2021) ("However, the successful movant is entitled to attorney's fees 'incurred,' regardless of whether the amount is paid by the client.").

[7] After the arbitrator added Plaintiffs to the arbitration, Plaintiffs sought to amend their complaint in the stayed state court action to add new claims and defendants. The defendants filed motions challenging Plaintiffs' amended complaint and jurisdiction.

conduct giving rise to this litigation, the specific attorney conduct for which Plaintiffs seek attorney's fees would not have been required in the California case or the arbitration. The fact that the same conduct may have given rise to more than one case, however, does not mean that attorney's fees are recoverable in this case for work performed in all of those separate cases. There are, however, a few time entries for work performed that was applicable to both the arbitration and this case because they have the same core facts and are based on the same legal theories. *Cf. Ibrahim*, 912 F.3d at 1172. Specifically, work relating to the legal authority of the arbitrator to decide the threshold legal question and whether Plaintiffs are bound by the arbitration clause in the arbitration agreement. These entries involve pre-lawsuit research and strategic discussions and meetings, and the Court allows those time entries to be recoverable in this case.

The Court also agrees that the *same* work performed by more than two attorneys is excessive and redundant. That does not mean, however, that more than two attorneys may not, for example, draft a brief, so long as they are drafting different sections of the brief or otherwise performing different drafting duties. The Court has carefully reviewed the entries relating to the drafting of Plaintiffs' briefs before this Court to eliminate excessive and redundant billing, while allowing more than two attorneys to perform different drafting and research functions.

The Court agrees that Plaintiffs may not recover for time spent working on their unsuccessful opposition to Defendant's motion for entry of a protective order in this case. The Court thus reduces the entries relating to Plaintiffs' opposition of that motion.

The Court has also reduced a few time entries that the Court concludes are clerical in nature. The Court also has reduced time entries where the description is vague or indecipherable (it appears that some time entries were cut off by the software program). The Court, however,

only reduces block billing of more than three hours. The Court did not find any such entries in Plaintiff's submission. There were block billing entries of less than three hours, but the Court did not reduce those submissions.

Finally, the Court notes that Plaintiffs state that they seek 25.1 hours for "no charge" time that they did not charge their client as an accommodation. The time submissions to the Court, however, mostly do not contain any time for the "no charge" billing entries and simply state "0" or are blank. Only 4.8 hours are included for "no charge" entries, not 25.1 hours. Based on the Court's calculation, Plaintiffs' totals do not include time for all the no charge entries, but only the 4.8 hours that actually include listed time. To the extent Plaintiffs request an additional 25.1 hours for "no charge" entries or otherwise request reimbursement for those blank "no charge" entries that do not detail any time spent, that request is rejected and those entries are not included in the Court's total. The Court only includes entries for which time is actually listed, so the Court may analyze the reasonableness of the time charged.

After considering Defendant's objections and analyzing all of Plaintiffs' submissions, the Court reduces all of the time claimed for attorney Caltigirone and reduces the time requested by the other attorneys by the following entries:

| **Attorney Reden:** | | **Attorney Riddell** | | **Attorney Cresap** | |
|---|---|---|---|---|---|
| 9/25/2021 | 0.7 | 4/22/2022 | 1.2 | 1/12/2022 | 0.9 |
| 9/27/2021 | 0.8 | 8/30/2022 | 0.4 | 1/18/2022 | 0.8 |
| 9/27/2021 | 2.7 | 10/7/2022 | 0.8 | 2/1/2022 | 0 |
| 9/28/2021 | 0.8 | 10/7/2022 | 0.2 | 2/1/2022 | 1.5 |
| 9/29/2021 | 2.6 | 10/12/2022 | 1 | 2/1/2022 | 3.2 |
| 9/30/2021 | 2.9 | 10/13/2022 | 2.6 | 2/2/2022 | 2 |
| 10/4/2021 | 1 | 10/13/2022 | 2.2 | 2/3/2022 | 0 |
| 10/5/2021 | 0.5 | 10/14/2022 | 1.4 | 2/3/2022 | 0.9 |
| 10/6/2021 | 2.6 | 12/12/2022 | 0.6 | 2/3/2022 | 1.4 |
| 10/16/2021 | 1.1 | | | 2/7/2022 | 3.1 |
| 10/26/2021 | 0.6 | **Total:** | **10.4** | 2/16/2022 | 0.8 |
| 10/28/2021 | 1.5 | | | 10/3/2022 | 7.4 |
| 10/29/2021 | 0.7 | | | 10/4/2022 | 1.7 |

PAGE 16 – OPINION AND ORDER

| Attorney Reden: | | Attorney Riddell | Attorney Cresap | |
|---|---|---|---|---|
| 11/15/2021 | 0.5 | | 10/12/2022 | 2.3 |
| 11/17/2021 | 0.2 | | 10/12/2022 | 1.5 |
| 11/17/2021 | 0.7 | | 10/13/2022 | 3.3 |
| 11/30/2021 | 0.3 | | 10/13/2022 | 1.3 |
| 11/30/2021 | 1.3 | | 10/19/2022 | 0.5 |
| 12/1/2021 | 2.9 | | 10/24/2022 | 0.4 |
| 12/1/2021 | 2.6 | | 10/28/2022 | 2.5 |
| 12/29/2021 | 1.5 | | 10/31/2022 | 1.5 |
| 1/10/2022 | 1 | | 11/1/2022 | 0 |
| 1/26/2022 | 0.4 | | 11/7/2022 | 0 |
| 2/2/2022 | 0.7 | | 11/7/2022 | 0 |
| 2/3/2022 | 0.8 | | 11/7/2022 | 0 |
| 2/7/2022 | 1.2 | | 11/8/2022 | 0 |
| 4/22/2022 | 1 | | 11/9/2022 | 0 |
| 5/25/2022 | 0.4 | | 11/9/2022 | 0 |
| 7/18/2022 | 0.5 | | 11/11/2022 | 1.5 |
| 12/29/2022 | 1.1 | | 1/18/2023 | 2 |
| | | | 2/8/2023 | 1 |
| **Total:** | **35.6** | | 2/10/2023 | 0.3 |
| | | | **Total:** | **41.8** |

Mr. Reden claimed 180.3 hours. Reducing those hours by 35.6 leaves 144.7 hours at $334 per hour for a fee of $48,329.80. Mr. Riddell claimed 70.1 hours. Reducing those by 10.4 leaves 59.7 hours, at $288 per hour for a fee of $17,193.6. Mr. Cresap claims 149.1 hours. Reducing those by 41.8 leaves 107.3, at $236 per hour, for a fee of $25,322.8. In total, Plaintiffs are entitled to attorney's fees in the amount of $90,846.20.

**F.  Adjustment to Lodestar**

As noted above, the lodestar calculation encompasses several of Oregon's statutory factors. The Court also considers Oregon's statutory factors in evaluating whether to adjust the lodestar. Plaintiffs do not request a fee multiplier. Plaintiffs did not specifically argue any of the statutory factors except the first factor under ORS § 20.075(1). Plaintiffs argue that under Oregon law their attorney fees are "mandatory" and also argue that the first eight factors under

PAGE 17 – OPINION AND ORDER

ORS § 20.075(1) do not apply. Plaintiffs contend those factors apply only for discretionary fees and are not applicable when fees are required under a statute. Thus, Plaintiffs contend that only the seven factors under § 20.075(2) are relevant.

Plaintiff misunderstands Oregon law. ORS § 20.075(2) expressly directs that when fees are "required by statute" a court nonetheless "shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees." That subsection then directs a court to, "[i]n addition," consider the factors in ORS § 20.075(2). Thus, all of the statutory factors may be relevant.

Turning to the factors, this case was somewhat complicated by the summary adjudication of the arbitration. It is unclear whether Defendant refused to stipulate to a stay of the arbitration while this Court resolved the threshold arbitrability question or whether the arbitrator refused to stay the arbitration. Defendant argues that the entire issue would have been unnecessary absent underlying fraudulent conduct by Plaintiffs, but that is a merits determination that remains unresolved. This factor does not support a adjustment in fees.

The attorney's fees award calculated under the lodestar is sufficient to compensate for a reasonable lodestar without overcompensating for work that was unreasonable, excessive, or unnecessary. The Court's reduction in reasonable hours also accounts for the factors relating to the reasonableness of the claims brought and deterrence. The lodestar calculation, however, still results in a reasonable fee given the amount of litigation needed for this case. This is sufficient to encourage parties to bring similar good faith claims, and to reward the time and labor involved, and recognize the amount involved (which was substantial given the arbitration award issued against Plaintiffs), the results obtained, the experience and ability of Plaintiffs' counsel, and the

other similar statutory factors. Considering all of the factors under ORS § 20.075, the Court does not find that a departure from the lodestar is warranted.

### G. Bill of Costs

Defendant argues that the Court should deny all costs because Plaintiffs' submission created the "incorrect impression" that all costs were incurred in this litigation when some of the costs predate this litigation and were incurred in the arbitration or the separate California case. The Court declines to deny all costs, but like with attorney's fees, only awards costs that were incurred in this litigation. Because the underlying facts and Plaintiffs' legal theories in all three cases are similar, however, some prelitigation costs involving research or obtaining materials that might help develop case theories or potentially provide evidence for this case are recoverable.

The Court finds that the filing fees in the California state case are not recoverable in this case. These total $665.32. The Court also finds that reimbursement in the amount of $45.57 for the cost identified simply as "payment" is too vague to support reimbursement. Thus, Plaintiffs' Cost Bill is reduced by $710.89. The Court awards costs in the amount of $2,997.20.

## CONCLUSION

The Court GRANTS IN PART Plaintiffs' motion for attorney's fees, ECF 74 in 3:22-cv-1258-SI, ECF 71 in 3:22-cv-1259-SI, and ECF 74 in 3:22-cv-1260-SI. The Court awards attorney's fees in the amount of $90,846.20. The Court GRANTS IN PART Plaintiff's Bill of Costs, ECF 75. The Court awards costs in the amount of $2,997.20.

**IT IS SO ORDERED**.

DATED this 10th day of April, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge